ISIDOR SCHNEIDLER, PROSECUTOR, v. CITY OF ATLANTIC CITY, RESPONDENT.

Argued May 6, 1924—Decided February 27, 1925.

1. By the provisions of section 2 of the "Walsh act" (*Pamph. L.* 1911, *p.* 462) the terms of all officers, whether elective or appointive, shall immediately cease and determine, with certain enumerated exceptions; therefore, when a city adopts the provisions of that act, the position of mercantile appraiser is abolished *ipso facto;* the position not being one of those excepted from the operation of the act.

2. By the supplement of 1913 to the "Walsh act" (*Pamph. L.,* *p.* 581), whenever the provisions of the act are adopted by a municipality, all boards and bodies then existing therein are abolished, and the powers and duties devolved upon them are transferred to the board of commissioners; and this transfer in-

cluded the duties imposed upon a mercantile appraiser whose office had been created by a statute passed prior to the "Walsh act."

On *certiorari*.

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutor, *Thompson & Hanstein*.

For the respondent, *William F. Sooy*.

The opinion of the court was delivered by

KALISCH, J.   The board of commissioners of Atlantic City passed an ordinance on the 17th day of April, 1924, by which the duties of mercantile appraiser were transferred to the director of revenue and finance.   The prosecutor was at the time of the adoption of the ordinance performing such duties.   He had been appointed for a term of three years, under an act entitled "An act regulating and providing for the government of cities," approved April 3d, 1902, and his term had not yet expired.   Section 28 of the act (*Pamph. L.* 1902, *p.* 300) provides: "That there shall be in every such city a mercantile appraiser who shall be appointed by city council for the term of three years, whose duty shall be to receive all mercantile license fees which may be prescribed under the authority of the twenty-seventh subdivision of the fifteenth section of this act; he shall· perform such other duties as city council may, from time to time, direct or impose."   Atlantic City had adopted the "Walsh act" (*Pamph. L.* 1911, *p.* 462), and was operating under it.   Section 2 of the act, *inter alia,* provides that the city council, or other governing body or bodies theretofore acting as governing body or bodies in such city and having any other functions, shall be *ipso facto* abolished, and the terms of all councilmen or aldermen and all other officers, whether elective or appointive, shall immediately cease and determine, and then follow several exceptions, within none of which the office of the prosecutor is exempted from the operation of the act.

By virtue of a supplement (*Pamph. L.* 1913, *p.* 581) to the act of 1911, the section above quoted was broadened in effect by section 1 of the act of 1913, which reads: "Whenever the provisions of the act, to which this act is supplemental, have been adopted by any municipality, either prior or subsequent to the passage of this act, all boards and bodies, whether state or local municipal agencies, then existing in such municipality [except the board of education and the District Court or courts], shall be *ipso facto* abolished, and all the powers and duties devolved by law upon such boards and bodies shall pass to, vest in and be performed by the board of commissioners elected under the provisions of the act to which this act is supplemental."    *    *    *

On the 17th day of April, 1924, the governing body of Atlantic City passed an ordinance, which is entitled "An ordinance abolishing the office of mercantile appraiser of the city of Atlantic City, and assigning the duties of said office to the director of revenue and finance."

The ordinance, in substance, recites that whereas the office of the mercantile appraiser, with an official head known as mercantile appraiser, is maintained by the city at a salary of $4,000 per annum, and whereas the director of the department of revenue and finance is the official head of the mercantile appraiser's office, and that the actual duties of the appraiser consist in the issuance of mercantile licenses and the collection of mercantile fees, the actual work of which is done by the clerical force employed by the city, and that it is not deemed necessary, under commission form of government, that there be two responsible heads in the office of mercantile appraiser, but that the director of the department of revenue and finance should perform the duties of mercantile appraiser, and thereby save the annual expense of the employment of a subhead now known as the mercantile appraiser.

It is quite obvious, from the plain language of the two sections of the acts above quoted, that the leglislative object was to abrogate all municipal boards, offices and municipal agencies, whether elective or appointive, in cities adopting com-

mission government, and to transfer the duties pertaining to the same to the commissioners of such municipality.

The contention, on behalf of the prosecutor, that the board of commissioners was legally powerless to abolish the office of mercantile appraiser, an office created by the statute of 1902, *supra,* because the power exercised by the commissioners was solely vested in the legislature, is based upon a misconception of the essential underlying facts.

While it is true that the ordinance is entitled "An ordinance abolishing the office of mercantile appraiser," &c., the title obviously had no pertinency to the office of mercantile appraiser created by the statute of 1902, *supra,* for the duties of that office, like the duties of every other municipal office, whether elective or appointive, were automatically transferred to the board of commissioners so far as municipalities, which had adopted a commission form of government, were concerned, among those which had was Atlantic City. In such municipalities the duties of the treasurer, comptroller and collector, notwithstanding that they were offices created by charter, were transferred to the director of the department of revenue and finance, of which he is the official head. Automatically, the titles of treasurer, comptroller, collector, &c., were wiped out.

It is therefore difficult to comprehend how it can be reasonably contended, in the present case, that because the office of mercantile appraiser was created under the statute of 1902, it still operates in Atlantic City by force of that statute, notwithstanding the explicit language of the statutes of 1911 and 1913 above quoted to the effect that all the powers and duties devolved by law upon such boards and bodies shall pass to, vest in and be performed by the board of commissioners elected under the provisions of the act.

The circumstance that, after Atlantic City had adopted commission government, the board continued to appoint, at $4,000 a year, a mercantile appraiser, who it appears assisted in performing duties which pertained to the department of revenue and finance, of which the director was the head, is of no material consequence, for it can make no difference

under what title of office the duties were performed, the essential conspicuous fact is that the prosecutor was holding his office, under an appointment by the board, as aid to the director of revenue and finance, and that when the office became a sinecure, it became and was a moral and legal duty of the board to vacate it. This it did in the spirit of economy and for the very proper reason that the duties to be performed belong to the director of revenue and finance. *Paddock* v. *Hudson Tax Board*, 82 *N. J. L.* 360; *Colgarry* v. *Street Commissioners of Newark*, 85 *Id.* 583; *Runge* v. *West Hoboken*, 88 *Id.* 301; *Durkin* v. *Newark Fire Commissioners*, 89 *Id.* 468.

Lastly, in answer to the contention of counsel of the prosecutor that the ordinance, in effect, attempts to abolish an office created by the statute of 1902, and that such act was wholly beyond the legal power of the board, it seems to us that it is quite clear that the statute of 1902, as to the appointment of a mercantile appraiser, is not applicable to cities which have adopted a commission government, and, further, that what the board did, in the instant case, was to abolish an office of its own creation, the right to do which cannot be successfully questioned.

The writ is dismissed, with costs.